UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PHILLIP TAYLOR,

                                        Plaintiff,

                    v.

CITY OF ROCHESTER,
ROCHESTER POLICE DEPARTMENT,
ROCHESTER POLICE DEPARTMENT OFFICER RIZZO,
and ROCHESTER POLICE DEPARTMENT JOHN DOE(S),

                                        Defendants.
_____

<u>DECISION AND ORDER</u>

16-CV-6606L

        Plaintiff Phillip Taylor ("plaintiff") brings this action against the City of Rochester, the

Rochester Police Department, and two officers who placed him under arrest on June 1, 2015:

named defendant Officer Daniel Rizzo ("Rizzo"), and Officer Spenser McAvoy ("McAvoy"), who

was originally described in the complaint as a "John Doe" police officer, but has been identified by

defendants as the second arresting officer. Plaintiff alleges that the defendants subjected him to

excessive force in violation of the United States Constitution and New York State Constitution,

assault, battery, and intentional infliction of emotional distress, and seeks compensatory and

punitive damages. (Dkt. #1-2).

        Defendants now move for summary judgment dismissing the complaint (Dkt. #15), and

plaintiff has cross moved (Dkt. #19) to stay consideration of the motion for summary judgment,

and to compel additional discovery. For the reasons that follow, plaintiff's motion to stay and for

additional discovery is denied, and defendants' motion for summary judgment is granted in part,

and denied in part.

## FACTUAL BACKGROUND

On June 1, 2015, plaintiff, who was being sought by the Rochester Police Department on two outstanding warrants, was under surveillance by City of Rochester Police Investigator Jeffrey McEntee ("McEntee"). After McEntee recognized plaintiff on a blue light camera located in the City of Rochester engaging in what McEntee believed to be an illegal drug transaction, defendants Officer Rizzo and Officer McAvoy were dispatched to the location with instructions to arrest plaintiff.

When the defendant officers arrived to the designated location, in uniform and driving marked police cars, they witnessed the plaintiff leaving a nearby market. Officer McAvoy stated that he exited his car and commanded plaintiff to come to him, as he was under arrest.

Plaintiff fled on foot, pursued by Officers Rizzo and McAvoy. Officer Rizzo broke off the chase at some point, returned to his vehicle and followed Officer McAvoy's radioed instructions concerning the direction plaintiff was headed. Ultimately, the defendants converged and reached plaintiff. The defendants allege that this occurred after plaintiff attempted to leap over a fence along the front yard of 128 Weld Street, failed to clear the fence completely, and landed face-down on the sidewalk.

According to defendants, plaintiff resisted arrest and physically fought all attempts by the defendant officers to take him into custody. During a struggle on the ground, plaintiff attempted to bring his hand, which was holding pills, to his mouth. When Officer Rizzo tried to cover plaintiff's mouth to prevent him from ingesting the pills, plaintiff bit down on Officer Rizzo's finger. The defendant officers testified that they struck plaintiff on the face and head in order to get him to release Officer Rizzo's finger.

2

Two other officers arrived on the scene, and plaintiff was handcuffed and taken into custody. Plaintiff, Officer Rizzo and Officer McAvoy were transported to Rochester General Hospital, where plaintiff was treated for superficial abrasions to his nose, forehead and chin, a chipped tooth, and a laceration to his lip. Officer Rizzo was treated for bruising to his finger, and Office McAvoy was found to have a broken bone in his hand.

On June 3, 2015, plaintiff was interviewed by a parole supervisor, and admitted to having been high on "Molly" (MDMA) at the time of his arrest.

## DISCUSSION

### I.   Plaintiff's Cross Motion To Stay the Motion For Summary Judgment, and For Additional Discovery

Plaintiff has not substantively opposed the pending motion for summary judgment. He has offered no counterstatement of facts, submitted no evidence in opposition, and made no attempt to identify any material questions of fact that would preclude summary judgment.

Instead, plaintiff has cross moved to stay the Court's consideration of the instant motion and to gain additional discovery, arguing that a grant of summary judgment would be premature, and that defendants' failure to respond to plaintiff's requests for document discovery has utterly deprived plaintiff of the ability to "present[] facts essential to justify opposition [to] Defendants' motion" for summary judgment. (Dkt. #19-1 at ¶14).

The document requests plaintiff claims were ignored by defendants were served on February 18, 2018, and defendants served their Rule 26 disclosures on plaintiff on November 9, 2018. Pursuant to a subsequent, amended Scheduling Order, the final discovery deadline expired on March 22, 2019, and motions to compel discovery were to be made no later than 30 days prior to that date (i.e., on or before February 20, 2019). (Dkt. #12). Plaintiff never objected to the

discovery responses (or lack thereof) produced by defendants, and never moved to compel any additional discovery, either before or after expiration of the deadline to do so.

While Fed. R. Civ. Proc. 56(d) permits a party to oppose summary judgment by submission of an affidavit explaining why additional discovery is needed to mount a response, that opposition must be accompanied by a detailed affidavit or declaration which explains: (1) what facts are sought and how they are to be obtained; (2) how those facts are reasonably expected to create a genuine issue of material fact; (3) what effort the affiant has made to obtain them; and (4) why the affiant was unsuccessful in those efforts. *See Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994). Furthermore, "[w]here the applicant has been dilatory in pursuing discovery, its request is 'disfavored.'" *Wright v. Eastman Kodak Co.*, 328 Fed. Appx. 738, 739 (2d Cir. 2009).

The affidavit of plaintiff's counsel fails to satisfy the requisite elements. It provides a brief summary of the chronology of discovery in the case, but provides no explanation as to why plaintiff did not engage in any further attempts to gain discovery from defendants after serving his initial demands. It does not set forth any facts that plaintiff seeks to uncover, identifies no deficiencies or evidentiary gaps in the defendants' disclosures (which defendants represent as having already included "all of the relevant and discoverable information [defendants] possessed"), and does not explain how further discovery could possibly be expected to create a genuine issue of material fact. The evidence in plaintiff's possession (and submitted by defendants in support of their motion for summary judgment) included all of plaintiff's relevant medical records, use of force reports, incident reports with statements by the arresting officers and Investigator McEntee, criminal history reports, sworn declarations by the defendant officers, parole revocation records, and portions of the transcript of plaintiff's deposition. Plaintiff has

provided no explanation as to how, in light of all the evidence at his disposal, he was unable to muster any defense to the pending motion for summary judgment without additional document discovery.

Indeed, it appears from the face of plaintiff's outstanding discovery demand that the bulk of plaintiff's requests for document production (including 9-1-1 call logs, ballistics reports, accident reports, seized vehicle reports, command logs, polygraph reports, skin and hair test results, etc.) sought documents that don't exist. Other requests ask for information concerning claims (such as municipal liability) which the complaint did not even allege, or refer to demands mistakenly directed to the New York City Police Department. In short, the outstanding portions of the discovery request amount to little more than a "fishing expedition," the factual goals of which plaintiff has made no attempt to specify. As such, it cannot furnish an appropriate basis on which to make a Rule 56(d) motion.

Plaintiff's cross motion seeking a stay of the defendants' motion for summary judgment, and/or additional discovery, is therefore denied.

## II. Defendants' Motion for Summary Judgment

Because plaintiff has not substantively opposed the defendants' motion for summary judgment, the facts set forth by defendants in their Statement of Undisputed Facts are deemed admitted, to the extent that they are supported by evidence in admissible form and not otherwise contradicted by other admissible evidence in the record. *See generally Jackson v. Monin*, 2016 U.S. Dist. LEXIS 32703 at *7 (W.D.N.Y. 2016).

Nonetheless, the plaintiff's failure to oppose a motion for summary judgment, standing alone, does not merit the granting of the motion, and the Court "must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material

fact." *Vermont Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Moreover, where, as here, the plaintiff has filed a Verified Complaint, the "verified complaint is to be treated as an affidavit . . . and [may] be considered in determining whether material issues of fact exist[.]" *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citations omitted). As such, the Court will consider the Verified Complaint as an affidavit to the extent that the statements it contains are based on plaintiff's personal knowledge and/or are supported by the record. *See Jamison v. Metz*, 541 Fed. Appx. 15, 18-19 (2d Cir. 2013); *Young v. Polizzi*, 2018 U.S. Dist. LEXIS 116280 at *2-*3 (N.D.N.Y. 2018).

**A. Relevant Standard**

A court may grant summary judgment only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in his favor. *See Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir. 1993).

**B. Plaintiff's Claims Against the City of Rochester and Rochester Police Department**

Initially, where, as here, Constitutional claims are alleged against a municipality, claims against underlying agencies (such as the Rochester Police Department) who do not exist apart from the municipality are typically dismissed as redundant. *See Solomon v. City of Rochester*, 2020 U.S. Dist. LEXIS 54417 at *10 (W.D.N.Y. 2020); *Nix v. City of Rochester*, 2017 U.S. Dist. LEXIS 123808 at *24 (W.D.N.Y. 2017); *Baez v. City of Rochester*, 2016 U.S. Dist. LEXIS 75421

at *5-*6 (W.D.N.Y. 2016). Plaintiff's claims against the Rochester Police Department are accordingly dismissed.

With respect to plaintiff's claims against the City of Rochester, it is well established that "[t]here is no respondeat superior liability under §1983." *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996). In other words, municipal defendants cannot be held liable based on the mere fact that one or more of their employees allegedly violated the plaintiff's civil rights. Rather, to succeed on a claim against a municipality, the plaintiff must show that "the alleged unlawful action [was] implemented or was executed pursuant to a governmental policy or custom." *Reynolds v. Giuliani*, 506 F.3d 183, 190 (2d Cir. 2007) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). The governmental policy or custom may have been formally enacted by lawmakers, or established by so-called "policymakers," i.e., government officials whose edicts or acts may fairly be said to represent official policy. *Id.*, 436 U.S. 658 at 694.

Here, neither the Verified Complaint nor any of plaintiff's subsequent submissions allege or describe any governmental policy or custom that might have contributed to the underlying facts, or identify any policymaking officials who had any involvement with them. Because plaintiff does not allege, nor is there any evidence of record to suggest, that the individual defendants' actions were undertaken pursuant to any official custom or policy that might give rise to supervisory or municipal liability, plaintiff's claims against the City of Rochester are accordingly dismissed.

### C.  Plaintiff's Section 1983 Claims Against Officers Rizzo and McAvoy

Section 1983 provides a right of action for persons aggrieved by the deprivation of their rights secured by either the Constitution or the laws of the United States. 42 U.S.C. §1983. In order to establish a claim under Section 1983, the plaintiff must show that the defendants, acting under the color of state law, deprived the plaintiff of a federal right. *See Cornejo v. Bell*, 592 F.3d 121,

127 (2d Cir.), *cert. denied*, 131 S. Ct. 158 (2010). Plaintiff contends that Officer Rizzo and Officer McAvoy deprived him of his rights under the United States Constitution.

Initially, there is no dispute that defendants Rizzo and McAvoy were acting under color of state law at the time of plaintiff's arrest, as they were in uniform, on duty, and acting within the scope of their employment as police officers. The question before the Court is, then, whether the undisputed facts establish that plaintiff was (or was not) deprived of one or more federal rights. While the Verified Complaint is not a model of clarity, the Court has attempted to discern the precise nature of plaintiff's plausibly stated claims, granting the Verified Complaint a liberal construction, and viewing it in the light most favorable to plaintiff.

### 1. False Arrest

By invoking the Fourth Amendment, plaintiff appears to allege that his arrest violated his right against unreasonable searches and seizures: that is, that he was arrested without probable cause.

At the summary judgment stage, "[t]he question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). The burden of establishing the absence of probable cause "rests on the plaintiff." *Berry v. Marchinkowski*, 137 F.Supp.3d 495, 524 (S.D.N.Y. 2015) (internal quotation marks omitted). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d 845 at 852.

Here, it is undisputed that there were multiple valid outstanding warrants for plaintiff's arrest (a bench warrant for criminal mischief and violation of an order of protection, and a New York State parole warrant for parole violations), and that the defendant officers had been informed of the warrants and of Investigator McEntee's belief that plaintiff had committed a crime. It is well-settled that the existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, and moreover that arresting officers are entitled to qualified immunity where it was objectively reasonable for them to believe that probable cause existed, or even where officers of reasonable competence could disagree as to the existence of probable cause. *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). *See also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).

Plaintiff does not dispute, or offer any evidence to call in to question, that the defendant officers had probable cause to arrest him and/or were entitled to qualified immunity with respect to his arrest. As such, there are no material questions of fact with respect to the existence of probable cause, and plaintiff's false arrest claims must be dismissed.

### 2.  Excessive Force and Assault and Battery

Plaintiff also alleges that the force used by the defendant officers was excessive, and caused him to incur scarring on his lip and head, as well as emotional trauma.

The standard for assessing a claim of excessive force under Section 1983 is one of "objective reasonableness," which "requires balancing the nature and quality of the intrusion on the plaintiff's [Constitutional] interests against the countervailing governmental interests at stake." *Tracy v. Fresh*water, 623 F.3d 90, 96 (2d Cir. 2010). Three primary considerations guide the Court's consideration: (1) the nature and severity of the crime precipitating the arrest; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the

suspect was actively resisting arrest or attempting to flee. *See Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015). As to the third factor, "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000). The standards for assessment of a state law assault and battery claim are identical to those for excessive force. *See Humphrey v. Landers*, 344 Fed. Appx. 686, 688 (2d Cir. 2009).

To the extent that plaintiff's Verified Complaint indicates that plaintiff attempted to passively surrender and did not resist his arrest in any way, the Court notes that subsequent to his arrest, plaintiff's parole was revoked and he was returned to prison, based on findings that plaintiff had physically assaulted the defendant officers during his arrest, including biting Officer Rizzo's hand. Those findings and the parole revocation were not subsequently appealed or overturned, and as such, plaintiff is barred from disputing them at this juncture. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction . . . if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction . . . has already been invalidated"). *See also Murphy v. New York*, 2004 U.S. Dist. LEXIS 29998 at *4-*5 (E.D.N.Y. 2004) (*Heck* applies to the outcome of parole revocation hearings); *Harris v. City of New York*, 2003 U.S. Dist. LEXIS 2708 at *11-*12 (S.D.N.Y. 2003) (same).

10

Nonetheless, while plaintiff's parole revocation for physically assaulting the defendant officers during his arrest may estop him from now claiming that he did not do so, it does not foreclose the plaintiff from claiming that he was subjected to excessive force. As the Second Circuit explained in *Sullivan v. Gagnier*, "there is no inherent conflict between a conviction for resisting arrest . . . and a finding that the police officers used excessive force in effectuating the arrest." 225 F.3d 161, 166 (2d Cir. 2000).

The question before the Court, then, is whether the undisputed facts establish that the amount of force used by the defendant officers – who admit to having struck the plaintiff's head with their hands and fists and kneed him in the side of the abdomen in an attempt to cause plaintiff to release Officer Rizzo's finger from his mouth – was objectively reasonable, in light of the totality of the circumstances confronting them, including plaintiff's flight and his physical resistance to the arrest.

The parties' descriptions of the amount of force used during plaintiff's arrest are sharply in dispute. Plaintiff's Verified Complaint testifies that he confronted the defendant officers in a residential yard, where one of them knocked him to the ground with a leg sweep. Plaintiff avers that one of the defendant officers got a running start and kicked him in the head, that he was thereafter kicked in the head approximately ten more times, that the officers slammed his head forcibly into the pavement at least three times, and that they then hauled him to his feet and punched him in the face at least five times, until he fell unconscious. (Dkt. #1-2).

In contrast, defendants' statements indicate that plaintiff unsuccessfully attempted to jump over a fence and fell face-first onto a concrete sidewalk, after which defendants proceeded to subdue him on the ground, using knee strikes to plaintiff's side and fist strikes to his head after plaintiff bit down forcefully on Officer Rizzo's finger, until the finger was released. The officers

do not describe having ever kicked plaintiff in the head, or having struck him in any way after he released Officer Rizzo's finger. The officers observed, and plaintiff later informed an investigator, that plaintiff was high on "Molly," a street drug, throughout the encounter.

The medical evidence indicates that when taken into custody, examined at the hospital, and photographed for booking, plaintiff was conscious. He vomited at least once, and was diagnosed with a "closed head injury" (a brain injury which does not penetrate the skull, with common causes including falls, traffic or bicycle accidents, contact sports and assaults). Medical records note scrapes on the bridge of plaintiff's nose, chin and the right side of his forehead, a chipped left upper front tooth, and a corresponding laceration inside his lower lip where the chipped tooth had cut it, which required one suture to close. Although no significant bruising was otherwise found on plaintiff's face or body, bruising and swelling was observed on the left side of his head. However, imaging studies of plaintiff's face, head and body showed no fractures or internal injuries, and his nasal bridge was intact. (Dkt. #15-7, #15-8, #15-9).

Defendants invite the Court to find, based on plaintiff's misstatements and significant omissions in the complaint (e.g., denying having resisted arrest, omitting any mention of having bitten Officer Rizzo, declining to mention that he possessed and attempted to swallow and thus conceal illegal drugs during the encounter, or that he was high on drugs at the time), that the entire Verified Complaint is not sufficiently credible to create any issues of material fact.

The Court declines to make such a finding. Notwithstanding the factual errors and omissions in the Verified Complaint, assessing the credibility of the conflicting versions of this encounter is a matter for the jury, and not for the Court on summary judgment. *See Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). This is not one of those "extraordinary cases, where the 'facts alleged are so contradictory that doubt is cast upon their plausibility [and] the

court may pierce the veil of the complaint's factual allegations and dismiss the claim.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) (quoting *Jeffreys*, 426 F.3d 549 at 554).

Because the accounts of plaintiff's arrest are markedly different, and because the objective medical evidence concerning plaintiff's diagnoses of a closed head injury, bruising and swelling on one side of his head, facial abrasions and a chipped tooth are not sufficiently benign or inconsistent with plaintiff's description of the force used against him in the Verified Complaint to conclusively discredit it, summary judgment on plaintiff's excessive force claim would be inappropriate at this juncture. *See Edwards v. Cornell*, 2017 U.S. Dist. LEXIS 195146 at *18 (D. Conn. 2017) (objective medical evidence of plaintiff's lacerations, disorientation at the scene, closed head injury and post-concussive syndrome are "sufficient evidence for a reasonable jury" to have credited his testimony concerning having been struck twice in the head while resisting arrest). *Accord Rolkiewicz v. City of New York*, 2020 U.S. Dist. LEXIS 36966 at *23 (S.D.N.Y. 2020) (summary judgment may be appropriate where the medical evidence of record "directly and irrefutably contradict[s] a plaintiff's descriptions of his injuries, [such that] no reasonable jury could credit plaintiff's account of the happening") (internal quotation marks and citations omitted).

For the same reasons, the Court cannot conclude that the defendant officers are entitled to qualified immunity with respect to plaintiff's excessive force claims. In general, public officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. *See Weyant*, 101 F.3d 845 at 857-858. The availability of the defense depends on whether "a reasonable officer could have believed" his or her actions to be lawful, in light of

clearly established law and the information he or she possessed. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Qualified immunity does not protect those who are "plainly incompetent or those who knowingly violate the law." *Id*., 502 U.S. 224 at 229 (quoting *Malley v. Briggs*, 475 U.S. 335, 341(1986)). At the time of plaintiff's arrest, the legal principles governing defendants' conduct and the use of force were well established. However, as noted above, the parties vigorously dispute the extent of force that was used, and plaintiffs' injuries are arguably consistent with both versions of events. The same factual issues that preclude summary judgment on plaintiff's excessive force claim also preclude determination of whether the officers are entitled to qualified immunity with respect to these claims. *See Weyant*, 101 F.3d 845 at 857.

Defendants' motion for summary judgment on plaintiff's excessive force claims (and/or the assault and battery claims which are subsumed therein) is accordingly denied.

### D.  Intentional Infliction of Emotional Distress

Plaintiff claims that he was subjected to the intentional infliction of emotional distress via the excessive force used against him, and through humiliating comments allegedly made to him at the hospital by an unidentified officer, who asked plaintiff if he wanted to get an AIDS test.

Under New York law, intentional infliction of emotional distress requires a showing of: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress. *See Warr v. Liberatore*, 270 F. Supp. 3d 637 (W.D.N.Y. 2017).

In New York, claims for intentional infliction of emotional distress are "extremely disfavored," and "[o]nly the most egregious conduct has been found sufficiently extreme and outrageous to establish" such a claim. *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 488 (S.D.N.Y. 2013). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as

to permit recovery is a matter for the court to determine in the first instance." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). However, the tort "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal citation and quotation marks omitted).

With respect to plaintiff's claim that he was subjected to intentional infliction of emotional distress through the imposition of excessive force, that claim must be dismissed as duplicative, as "federal district courts in this Circuit 'have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory.'" *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 442 (W.D.N.Y. 2018) (quoting *Caravalho v. City of New York*, 2016 U.S. Dist. LEXIS 44280 at \*75 (S.D.N.Y. 2016)). Here, plaintiff's claim of intentional infliction of emotional distress arising out of the use of excessive force is entirely subsumed by his excessive force and/or assault and battery claims, and as such, it must be dismissed. *See e.g.*, *Centeno v. City of New York*, 2019 U.S. Dist. LEXIS 51890 at \*26-\*27 (S.D.N.Y. 2019).

With respect to plaintiff's allegation that an unidentified police officer mockingly asked him if he wanted an AIDS test, such conduct fails to rise to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and thus fails to state a claim for intentional infliction of emotional distress. *See Chanko v. Am. Broadcasting Cos. Inc.*, 27 N.Y.3d 46, 56 (2016).

Plaintiff's claim of intentional infliction of emotional distress is accordingly dismissed.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment dismissing the complaint (Dkt. #15) is granted in part, and denied in part. Material questions of fact bar summary judgment with respect to plaintiff's claims of excessive force and/or assault and battery against

defendant officers Rizzo and McAvoy. The remainder of plaintiff's claims, including but not

limited to false arrest and/or intentional infliction of emotional distress, as well as all of plaintiff's

claims against the City of Rochester, the Rochester Police Department, and any additional "John

Doe" defendants,[1] are dismissed in their entirety, with prejudice. Plaintiff's cross motion seeking

to stay the motion for summary judgment, and/or for further discovery (Dkt. #19) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
         May 6, 2020.

---

[1] Where, as here, "a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the defendant's name . . . the plaintiff simply cannot continue to maintain a suit against the John Doe defendant." *Solomon*, 2020 U.S. Dist. LEXIS 54417 at *10-*11 (quoting *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009)).